## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **GOVERNMENT OF PUERTO RICO** *ex rel.* **MESSO LLC,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**FIRST TRANSIT OF PUERTO RICO, INC.; FIRST TRANSIT INC.; FIRST TRANSIT TRANSPORTATION, LLC; FIRST TRANSIT PARENT, INC.; FIRSTGROUP AMERICA, INC. (FGA); FIRSTGROUP AMERICA HOLDINGS, INC.; FIRSTGROUP INTERNATIONAL, INC.; FIRST STUDENT PARENT, INC.; FIRST STUDENT, INC.; FIRST STUDENT HOLDING COMPANY LLC; FIRST STUDENT SERVICES LLC; FIRST STUDENT TRANSPORTATION LLC; FIRSTGROUP AMERICA PLC; RECESS HOLDCO LLC; TRANSDEV GROUP; TRANSDEV NORTH AMERICA, INC.,**<br><br>    **Defendants.** | **CIVIL NO. 3:26-cv-01070 (GMM)**<br><br>(On removal from Puerto Rico Civil Action No. SJ-2025-CV-07134 (603)) |

## <u>MOTION TO REMAND</u>

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff-Relator MESSO, LLC ("Relator"), through undersigned counsel, and respectfully moves this Honorable Court to remand this action to the Commonwealth Court of First Instance, San Juan Part, from which it was removed. In support thereof, Relator states and avers as follows:

### I. INTRODUCTION

The First Transit Defendants –First Transit Parent, Inc. ("FTP"), First Transit, Inc. ("FT"), and Transdev North America, Inc. ("Transdev NA") (collectively, "First Transit Defendants") filed a Notice of Removal (Dkt. No. 1) asking this Court to exercise jurisdiction over a *qui tam*

fraud action filed under Puerto Rico law, in Puerto Rico courts, in the name of the Government of Puerto Rico. The First Transit Defendants advances two independent jurisdictional theories: diversity under 28 U.S.C. § 1332 and PROMESA "related to" jurisdiction under 48 U.S.C. § 2166(a)(2). Both fail.

The complaint asserts claims under Act No. 154-2018 –*Ley de Reclamaciones Fraudulentas a los Programas, Contratos y Servicios del Gobierno de Puerto Rico*, translated as False Claims to Government of Puerto Rico Programs, Contracts, and Services Act, 32 L.P.R.A. §§ 2931 *et seq.* ("Act No. 154-2018")– and an alternative claim under the civil-law doctrine of *cobro de lo indebido* (recovery of undue payment) codified at Article 1520 of the Puerto Rico Civil Code, 31 L.P.R.A. § 10751. This is a Commonwealth enforcement action, brought in the name of the Commonwealth of Puerto Rico, seeking restitution of approximately $85 million in public funds allegedly obtained through a fraudulent billing scheme involving public transportation contracts with the Puerto Rico Highway and Transportation Authority ("PRHTA").

The diversity theory is fatally flawed for two independent reasons: *first*, the real party in interest is the Commonwealth of Puerto Rico, which is not a "citizen" under § 1332; *second*, defendant First Transit of Puerto Rico, Inc. ("FTPR") is a citizen of Puerto Rico under the *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), nerve center test, independently destroying complete diversity. The PROMESA theory is equally without merit. This action is based solely on Puerto Rico law; it does not reference or implicate PROMESA in any way. The statutory tools that PROMESA created for financial reform do not provide the basis for any claim asserted here, and the Title III cases have been in the post-confirmation phase for more than three years. No Plan assigned this *qui tam* action to another entity with exclusive prosecution authority, there are no parallel proceedings, and the recovery is not pledged to creditors under either Plan. The

defendants' "vesting" argument –that the confirmed Plans of Adjustment stripped the Relator of standing– fails at every step: the Plans' boilerplate provisions neither captured these fraud claims nor repealed the *qui tam* enforcement mechanism that Act No. 154-2018 created, and neither Plan nor Confirmation Order contains any provision addressing *qui tam* standing. Even if jurisdiction existed, every equitable remand and abstention factor favors return of this case to the Commonwealth's courts. At bottom, this is a Puerto Rico case, about Puerto Rico law, involving Puerto Rico contracts, that belongs in Puerto Rico courts.

## II. PROCEDURAL BACKGROUND

On August 11, 2025, Relator filed this *qui tam* action in the Commonwealth Court of First Instance, San Juan Part, under Case No. SJ-2025-CV-07134. The action was brought on behalf of the Government of Puerto Rico pursuant to Act No. 154-2018. The complaint alleges that the defendants –comprising the corporate entities that owned, controlled, and operated First Transit of Puerto Rico, Inc. ("FTPR")– submitted false claims to the PRHTA through a scheme involving fraudulent billing, retroactive contract amendments, continued billing for the rental of buses already transferred to the government, failure to maintain required licenses, and submission of false financial statements. The complaint seeks restitution of approximately $85 million, treble damages under Act No. 154-2018, per-violation civil penalties, and attorney's fees.

On February 9, 2026, the First Transit Defendants filed their Notice of Removal invoking diversity jurisdiction under 28 U.S.C. §§ 1332(a), 1441(a)–(b), and 1446, and PROMESA "related to" jurisdiction under 48 U.S.C. § 2166(a)(2) and § 2166(d)(1), with a request for transfer to Judge Swain as a proceeding related to *In re Commonwealth of Puerto Rico*, No. 17-BK-03283. Two additional groups of defendants filed separate Notices of Removal on the same date, each advancing different jurisdictional theories. Those removals are the subject of separate motions.

3

This motion addresses both the diversity and PROMESA jurisdiction theories advanced by the First Transit Defendants in Civil Action No. 3:26-cv-01070.

### III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a state-court civil action to federal court only if the action could have been filed originally in federal court. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The removing party bears the burden of establishing federal jurisdiction. *Roselló-González v. Calderón-Serra*, 398 F.3d 1, 11 (1st Cir. 2004). Removal statutes are strictly construed, with all doubts resolved in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941); *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999).

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity of citizenship between all plaintiffs and all defendants, and an amount in controversy exceeding $75,000. Moreover, "[t]here is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973) (citing *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894)). Because diversity jurisdiction is limited to controversies between "citizens," the presence of a state or territory as a party defeats diversity. *Id.*

For corporate defendants, citizenship is determined under 28 U.S.C. § 1332(c)(1), which provides that a corporation is deemed a citizen of *both* its state of incorporation *and* the state where it has its principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). The party asserting diversity bears the burden of establishing both prongs of corporate citizenship. *Id.* at 96; *Media Duplication Servs., Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1236 (1st Cir. 1991).

## IV.  DIVERSITY JURISDICTION DOES NOT EXIST

### A. The Government of Puerto Rico Is the Real Party in Interest

Under Act No. 154-2018, a *qui tam* action is brought "a nombre del Gobierno" –in the name of the Government of Puerto Rico. 32 L.P.R.A. § 2934a. The statute's use of the phrase "in the name of the Government" is not incidental; it is constitutive. The statutory framework of Act No. 154-2018 leaves no doubt that the Commonwealth of Puerto Rico –not the relator– is the real party in interest. The Relator acts as the Government's statutory assignee, and the Government retains plenary authority to intervene in, dismiss, or settle the action at any time. *Id.* As such, the relator does not prosecute this action on his own behalf; he prosecutes it for the benefit of the Government. The relator may not settle, compromise, or dismiss the action without the prior written approval of the Secretary of Justice. The Secretary retains absolute discretion– unreviewable by any court– to intervene in the action, assume primary control of the litigation, or direct its dismissal. And the relator's compensation is confined to a statutory percentage of the recovery: fifteen to twenty-five percent if the Government intervenes, twenty-five to thirty percent if it does not. The relator receives no independent judgment; the entirety of the recovery, less the relator's statutory share, inures to the public treasury. 32 L.P.R.A. § 2934b. These structural features confirm that the Government –not the Relator–is the real party in interest for jurisdictional purposes.

The Supreme Court's jurisprudence interpreting the federal False Claims Act, 31 U.S.C. §§ 3729–3733 ("federal FCA") –on which Act No. 154-2018 was modeled– is directly instructive. A *qui tam* action under the federal FCA is brought "on the Government's behalf" and "in the name of the Government," and the injury it asserts is "exclusively" to the Government. *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 424–25, 437 (2023). The FCA

"effect[s] a partial assignment of the Government's own damages claim", *id*. at 425 (quoting *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000)), and the Government remains a "real party in interest" regardless of whether it has formally intervened. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009); *Polansky*, 599 U.S. at 425. The "partial assignment" framework is dispositive: because the Relator is exercising the Government's own claim on the Government's behalf, the Government—not the Relator—is the party whose citizenship controls for diversity purposes. For diversity analysis, it is this real-party-in-interest determination that controls citizenship.

The First Transit Defendants attempt to circumvent this rule by arguing that the PRHTA – not the Commonwealth– is the "real plaintiff" in this action. *See* Dkt. No. 1, ¶¶ 11, 17–18. This argument is unavailing. Article 1.02 of Act No. 154-2018 defines "Government" as the Government of Puerto Rico, which expressly encompasses its agencies, instrumentalities, and public corporations. 32 L.P.R.A. § 2931a. Even if the PRHTA is the injured agency, the action vindicates the sovereign's interest. The complaint's caption reads "Government of Puerto Rico *ex rel.* Messo LLC," and the causes of action are brought in the name of the Government, not in the name of the PRHTA acting independently. The expansive definition provided by Act 154-2018 forecloses any attempt to isolate the PRHTA as the "real plaintiff" separate from the Commonwealth.

Furthermore, the rule that a state or territory is not a "citizen" for diversity purposes is rooted in century-old Supreme Court precedent. *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894) ("A state is not a citizen. And under the judiciary acts of the United States it is well settled that a suit between a state and a citizen or a corporation of another state is not between citizens of different states"). The Court in *Moor* reaffirmed this unequivocally: "There is no

question that a State is not a 'citizen' for purposes of the diversity jurisdiction." 411 U.S. at 717. Without a "citizen" on the plaintiff's side, § 1332 jurisdiction fails as a matter of law.

The precise scenario presented here –a state false claims act *qui tam* removed to federal court on diversity grounds– has been squarely addressed and rejected. In *Indiana ex rel. Harmeyer v. The Kroger Co.*, No. 1:17-cv-538, 2017 WL 2544111 (S.D. Ind. June 13, 2017) (Magnus-Stinson, C.J.), the court held that Indiana remained the real party in interest even absent intervention, because the action was brought on behalf of the State. Indiana's presence destroyed diversity because a state is not a citizen. The parallel here is exact: Act No. 154-2018 requires the action to be brought in the name of the Government, which retains majority-recovery rights, intervention authority, and dismissal-veto powers. 32 L.P.R.A. § 2934a.

The First Transit Defendants rely on *Autoridad de Carreteras y Transportación v. Transcore Atl., Inc.*, 128 F. Supp. 3d 485 (D.P.R. 2015), for the proposition that the PRHTA is a "citizen" for diversity purposes. But *Transcore* involved a case initiated by the PRHTA itself –not a *qui tam* brought on behalf of the Government– and the diversity analysis was not contested on the real-party-in-interest ground. Moreover, crediting the defendants' reading would produce an anomalous result: the very same *qui tam* action would or would not be removable depending on which public corporation was defrauded– a distinction with no basis in the statutory text. Act No. 154-2018 requires all *qui tam* actions to be brought in the name of the "Government," regardless of the specific instrumentality that suffered the loss.

## B. Even Absent the Commonwealth's Presence, FTPR's Own Puerto Rico Citizenship Independently Destroys Complete Diversity

Even if this Court were to reject the foregoing arguments and conclude that the Commonwealth is not the real party in interest –a conclusion that would require disregarding the statute's text, the Supreme Court's federal FCA jurisprudence, and directly on-point authority–

diversity jurisdiction would still fail. FTPR is a named defendant in the underlying *qui tam* action. The Notice of Removal supposes that FTPR is a citizen of Delaware because it was created and organized under the laws of that state and asserts that "[n]o other defendant is a citizen of Puerto Rico". Dkt. No. 1, ¶ 18. But the removing defendants addressed only FTPR's state of incorporation, ignoring the second prong of corporate citizenship required under 28 U.S.C. § 1332(c)(1): FTPR's principal place of business. The complaint's own allegations –which the removing defendants attached to their Notice– establish that FTPR's nerve center was in Puerto Rico, making it a citizen of Puerto Rico and destroying complete diversity.

As set forth above, 28 U.S.C. § 1332(c)(1) requires the removing party to establish *both* prongs of corporate citizenship, and "an allegation of corporate citizenship should reflect both the state of incorporation and the principal place of business." *Kingman v. Sears, Roebuck & Co.*, 526 F. Supp. 1182, 1184 (D. Me. 1981). The First Circuit has held it "apodictic" that this burden rests on the party asserting diversity. *Bearbones, Inc. v. Peerless Indem. Ins. Co.*, 936 F.3d 12, 15 (1st Cir. 2019); *Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 40 (1st Cir. 2016). The Notice does not identify FTPR's principal place of business, does not allege where FTPR's officers directed its activities, and does not even assert that FTPR's principal place of business was outside Puerto Rico. This silence is a failure to carry the fundamental burden, and standing alone warrants remand.

Under *Hertz*, the "principal place of business" of a corporation refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities"; what the Court called the corporation's "nerve center." 559 U.S. at 92–93. In practice, the nerve center "should normally be the place where the corporation maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination ... and not simply an office where the corporation holds its board meetings." *Id.* at 93. The word "place" is singular, requiring

courts to identify a single location; the word "principal" requires that it be the "main, prominent" one. *Id.* The Court emphasized that "administrative simplicity is a major virtue in a jurisdictional statute," *id.* at 94, and that the burden of establishing both prongs of corporate citizenship rests on the party asserting diversity. *Id.* at 96–97. Here, FTPR carried only the incorporation prong.

The First Transit Defendants' failure to address FTPR's principal place of business is not surprising, because the complaint's own allegations compel the conclusion that FTPR's nerve center, and therefore its principal place of business, is Puerto Rico. Specifically, the complaint alleges that FTPR "is a corporation created and organized under the laws of the State of Delaware, registration number 3660855" whose "physical address is Ochoa Building, 500 Calle de la Tanca, Suite 514, San Juan, PR, 00901" and whose "mailing address is PO Box 9022946, San Juan, PR, 00902-2946." Compl. ¶ 2. The complaint further alleges that FTPR "was authorized to conduct business in the Commonwealth of Puerto Rico as of June 26, 2003, and, according to its Certificate of Authorization to do business in Puerto Rico, its exclusive purpose was to operate transportation systems." *Id.* The complaint then details FTPR's sole line of business: the operation, maintenance, and management of the Metrobus I and Metrobus Express public transportation routes under a service contract with the PRHTA, originally executed on June 30, 2008, and renewed through successive amendments, all of which were executed and performed within Puerto Rico. Compl. ¶¶ 22–48. All invoicing and billing –the very conduct that forms the basis of this fraud action– occurred in Puerto Rico. FTPR's entire operational existence was bound to this jurisdiction.

Under the *Hertz* nerve center test, FTPR's principal place of business is Puerto Rico. The First Circuit and the District of Puerto Rico have consistently held that Delaware-incorporated corporations operating exclusively in Puerto Rico are citizens of Puerto Rico. *See Lugo-Viña v. Pueblo Int'l, Inc.*, 574 F.2d 41, 44 (1st Cir. 1978) ("[o]nly Puerto Rico, the locus of Pueblo's

regular operations, could therefore serve as its 'principal place of business'"); *Díaz-Rodríguez v. Pep Boys Corp.*, 410 F.3d 56, 60 (1st Cir. 2005) (principal place of business was Puerto Rico where all physical operations located there); *Roman Ramos v. H.B. Fuller Co. Puerto Rico*, 729 F. Supp. 221, 223 (D.P.R. 1990) (Delaware corporation conducting business exclusively in Puerto Rico for 25 years, with all operations, offices, and employees there); *Bender v. Hilton Riviera Corp.*, 367 F. Supp. 380, 382–83 (D.P.R. 1973) (Delaware corporation with all assets and offices in Puerto Rico, engaged in only one business concentrated there). FTPR presents an even stronger case: it was a single-purpose subsidiary created specifically to execute PRHTA contracts within Puerto Rico, with its corporate existence entirely bound to its Puerto Rico operations.

Moreover, the Supreme Court of Puerto Rico recently addressed FTPR's status as a Puerto Rico-centered entity. In *Transporte Sonnell, LLC v. Junta de Subastas de la PRHTA y First Transit PR, Inc.*, 214 D.P.R. 633 (2024), the court held that under Puerto Rico law regarding government bidding processes, FTPR must be treated as a separate corporate entity and must demonstrate its own capacity independently of its parent chain. *Id.* at 659. The court faulted FTPR for submitting the financial statements of its parent entities rather than its own, *id.* at 656–57; and took judicial notice that FTPR's total assets never exceeded approximately $20 million, expressing serious doubts as to whether First Transit PR has the capacity to manage a Contract such as the one at issue, which exceeded $50 million. *Id.* at 658 n.27.

This corporate separateness principle is directly applicable to the *Hertz* analysis. If FTPR must be assessed independently, its principal place of business must be determined by where *its own* officers directed *its own* activities. All indicia point to Puerto Rico: FTPR's sole physical office was in San Juan; its sole line of business was operating PRHTA bus routes within the Commonwealth; its sole contracts were with a Puerto Rico public corporation; its entire corporate

substance –assets under $20 million– was concentrated here. Any argument that FTPR was directed from outside Puerto Rico would concede the lack of independent corporate substance that *Transporte Sonnell* condemned; treating FTPR as independent confirms its nerve center was in Puerto Rico. Either way, diversity fails.

To the extent the defendants might argue that FTPR was a mere pass-through entity whose decisions were made at the parent level, such an argument would concede the absence of independent corporate substance—precisely the alter-ego relationship that would expose the parent entities to direct liability. The defendants cannot simultaneously maintain that FTPR is an independent corporate entity for liability purposes and a mere conduit for citizenship purposes.

Because FTPR is a citizen of both Delaware (by incorporation) and Puerto Rico (by principal place of business) under 28 U.S.C. § 1332(c)(1), and because the plaintiffs –whether characterized as the Commonwealth, the PRHTA, or Messo LLC– are all citizens of Puerto Rico, complete diversity does not exist. FTPR is a named defendant in the complaint. The complete diversity requirement demands that *no* plaintiff be a citizen of the same state as *any* defendant. *Gabriel v. Preble*, 396 F.3d 10, 13 (1st Cir. 2005) ("[d]iversity jurisdiction exists only when there is complete diversity, that is, when no plaintiff is a citizen of the same state as any defendant"); *Olympic Mills Corp. v. DCC Operating, Inc.*, 477 F.3d 1, 6 (1st Cir. 2007).

The Supreme Court's recent unanimous decision in *Hain Celestial Group, Inc. v. Palmquist*, No. 24-724, 607 U.S. ___ (Feb. 24, 2026) (Sotomayor, J.), forecloses any possible attempt to cure this defect. *Hain Celestial* held that when complete diversity is lacking due to a non-diverse defendant, the jurisdictional defect cannot be cured by erroneous dismissal of that defendant; the judgment must be vacated. *Id.*, slip op. at 7–9. The Court further held that Rule 21 cannot be used to dismiss a properly joined non-diverse party over the plaintiff's objection,

reaffirming that "[t]he plaintiff is 'the master of the complaint.'" *Id.*, slip op. at 9–10 (quoting *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025)). FTPR was named in the original state-court complaint, is a properly joined defendant, and is a citizen of Puerto Rico. Its presence is fatal to diversity jurisdiction, independently of, and in addition to, the Commonwealth's real-party-in-interest status. The First Transit Defendants' failure to carry their burden on a jurisdictional prerequisite is, standing alone, sufficient to require remand, and no amount of post-removal briefing can cure this deficiency.

### V.  PROMESA "RELATED TO" JURISDICTION DOES NOT EXIST

Under PROMESA Section 306(a)(2), the Title III Court's subject-matter jurisdiction includes only matters "arising under" PROMESA's Title III restructuring provisions or matters "arising in or related to" cases under Title III. 48 U.S.C. § 2166. This language substantially mirrors the bankruptcy courts' jurisdictional grant under 28 U.S.C. § 1334. *Compare* PROMESA § 306(a)(2) ("The district courts shall have . . . original but not exclusive jurisdiction of all civil proceedings arising under this title, or arising in or related to cases under this title.") *with* 28 U.S.C. § 1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.").

First Transit concedes that the Court has neither arising in nor arising under jurisdiction. They assert only "related to" as the basis for jurisdiction under PROMESA. But they are wrong: the *qui tam* action is not related to the Commonwealth or PRHTA Title III cases, because those cases have been in the post-confirmation phase for more than three years, and this case has nothing to do with any implementation of the relevant Plans of Adjustment, distributions to creditors, or adjustment of debtor-creditor relations. *See* HTA Confirmation Order [Dkt. No. 22581] (D.P.R. Oct. 12, 2022); HTA Notice of Effective Date [Dkt. No. 22999] (D.P.R. Dec. 6, 2022);

Commonwealth Confirmation Order [Dkt. No. 19813] (D.P.R. Jan. 18, 2022); Commonwealth Notice of Effective Date [Dkt. No. 20349] (D.P.R. Mar. 15, 2022).

## A. The *Qui Tam* Action Is Not "Related To" the Title III Cases

A matter is "'related to' bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991) (adopting *Pacor*), *abrogated in part on other grounds*, *Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992).[1] In other words, a matter is related to a bankruptcy if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor*, 743 F.2d at 994); *Fin. Oversight & Mgmt. Bd. for P.R. v. Hernández-Montañez (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 77 F.4th 49, 60–63 (1st Cir. 2023) (finding the conceivable effect test applies in the post-confirmation context in Title III cases). But while "related to" jurisdiction is "quite broad," it is not "limitless." *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 663 (1st Cir. 2017) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995); *Bos. Reg'l Med. Ctr., Inc. v. Reynolds (In re Bos. Reg'l Med. Ctr., Inc.)*, 410 F.3d 100, 105 (1st Cir. 2005)). In the PROMESA context, post-confirmation "related to" jurisdiction that does not involve fundamental Title III issues does not extend to cases where "PROMESA's tools for financial reform [do] not provide the basis for the claim." *Hernández-Montañez*, 77 F.4th at 63.[2]

---

[1] Under PROMESA § 301(c)(5), references to "bankruptcy estate" should be read as references to the "debtor." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 621 B.R. 289, 299–300 (D.P.R. 2020) ("Section 301(c)(5) of PROMESA is therefore properly read as applying not only to incorporated provisions of the Bankruptcy Code that use the specific term 'property of the estate,' but also to provisions [that] . . . contain the term 'estate.'").

[2] Likewise, this case has nothing to do with PROMESA's "tools for financial reform."

The First Transit Defendants acknowledge, as they must, that post-confirmation "related to" jurisdiction "may narrow some after confirmation of a plan […]." Notice ¶ 21 (citing *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 650 B.R. 334, 349 n.12 (D.P.R. 2023)). They contend that jurisdiction survives where a matter "affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan." *Id.* (quoting *In re Enivid, Inc.*, 364 B.R. 139, 147 (Bankr. D. Mass. 2007)). The First Circuit has likewise recognized that "as the corporation moves on, the connection [to the bankruptcy] attenuates." *In re Bos. Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 107 (1st Cir. 2005); *see also Hernández-Montañez*, 77 F.4th at 62–63 (acknowledging the rationales for narrowing post-confirmation jurisdiction). The Commonwealth Plan was confirmed on January 18, 2022, with an effective date of March 15, 2022. The PRHTA Plan was confirmed on October 12, 2022, with an effective date of December 6, 2022. Both Plans have been in administration for over three years. Creditors are being paid. The restructuring is no longer in its implementation phase. Post-confirmation "related to" jurisdiction is at its most attenuated, and whatever residual jurisdiction survives does not reach a Puerto Rico-law fraud-recovery action that has nothing to do with the interpretation, implementation, or administration of either Plan.

As an initial matter, the *qui tam* action is based solely on Puerto Rico law. It does not reference or implicate PROMESA in any way. In fact, the *qui tam* action contains two causes of action predicated only on Puerto Rico law: (i) the *qui tam* claim under Puerto Rico's Act No. 154-2018 and (ii) recovery of funds wrongfully obtained under Article 1520 of the Puerto Rico Civil Code. Compl. ¶¶ 69–95. Neither cause of action requires a court to apply provisions or principles under PROMESA. "PROMESA's tools for financial reform" are not a basis for the claims asserted in this *qui tam* action and thus the Title III Court does not have "related to" jurisdiction over the action. *See Hernández-Montañez*, 77 F.4th at 63.

14

First Transit nevertheless argues that the Title III Court has already determined that it has "related to" jurisdiction over cases like this one where there is a question as to whether a plaintiff can assert causes of action vested in the Title III debtor. Notice ¶¶ 23–30 (citing *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 650 B.R. 323, 330 (D.P.R. 2022) (Swain, J.) (the "*Commonwealth Case*"), *aff'd sub nom.*, *Fin. Oversight & Mgmt. Bd. for P.R. v. Estate of Serrano (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 102 F.4th 527 (1st Cir. 2024)). That case is nothing like this one, and invoking it is meritless.

In the *Commonwealth Case*, beneficiaries of the Employees Retirement System of the Government of Puerto Rico ("ERS") filed suit against UBS Financial Services Incorporated of Puerto Rico for breach of contract and violations of Puerto Rico law before the Title III case commenced. *Commonwealth Case*, 650 B.R. at 328. The Plan then assigned ERS's causes of action to the Avoidance Action Trustee with exclusive prosecution authority and dissolved the ERS. *Id.*; *Estate of Serrano*, 102 F.4th at 532. UBS moved to enforce the Plan, arguing that the beneficiaries' claims had been transferred and that continuing to litigate violated the Plan. *Estate of Serrano*, 102 F.4th at 532–33. The Title III Court held that it had "related to" jurisdiction over the UBS motion because the "dispute underlying the Motion to Enforce the Plan is whether the ERS Beneficiaries . . . are entitled to recover additional monies –beyond the bargained-for treatment of their ERS pension benefit rights that is incorporated in the Plan … These issues are related to the administration and execution of the Plan." *Commonwealth Case*, 650 B.R. at 329.

In stark contrast, neither the Commonwealth Plan nor the PRHTA Plan assigned the *qui tam* action to another entity with the exclusive power to prosecute the action. The *qui tam* action (like every other asset not disposed of by these Plans) simply revested in its original owner to do with it as it wished. PRHTA Plan § 41.1; Commonwealth Plan § 92.1 (cited in Dkt. 1, p. 10). Nor

does the *qui tam* action interfere with any other action brought by the Commonwealth, PRHTA, or any entity assigned to prosecute actions on their behalf. And, unlike the UBS case where there were parallel proceedings where a defendant needed the Title III Court to determine which one was authorized under Title III Plans of Adjustment, there are no dueling actions here.

Equally important, unlike the *Commonwealth Case*, the *qui tam* action will not affect any creditor's distributions or plan treatment, or the administration of the post-confirmation Title III cases. Other than claim objections, there is no administration of the Title III cases–there is no handling and administration of the restructuring to effect. And the *qui tam* action does not alter any of the Commonwealth's or PRHTA's rights, liabilities, or freedom of action as debtors or post-adjustment debtors, which is the key issue for "related to" jurisdiction. Defendants do not identify how this would even be possible, for good reason: any funds recovered by the Relator will not go to pay the Commonwealth's or PRHTA's creditors. Under the PRHTA Plan, bondholders received fixed compensation in the form of bonds and HTA General Unsecured Claims are only entitled to a fixed cash distribution and net recoveries from Avoidance Actions. PRHTA Plan §§ 1.195, 5.1–18.1, 20.1. Under the Commonwealth Plan, only general unsecured claims are entitled to net recoveries from Avoidance Actions. Commonwealth Plan §§ 62.1, 70.1. Whatever the Relator recovers from the *qui tam* action is not pledged to creditors under either Plan.

The defendants' separate suggestion that the complaint's allegations of PRHTA misadministration "raise serious questions as to the entity's capacity to implement and perform under its Plan" (Notice ¶¶ 5, 24, 31) proves too much: if allegations of negligent contract administration sufficed to confer "related to" jurisdiction, every tort or breach-of-contract claim against any Commonwealth instrumentality would be removable. This is precisely the kind of speculative, attenuated link that does not satisfy even the broad *Pacor* standard.

As such, First Transit's conclusory statement that to resolve the question of who must bring the claims asserted in the *qui tam* action the Court must "consider and interpret the plans" and the "proper construction of the plans" misses the mark. Notice ¶¶ 24, 30. Nothing in either Plan assigns the *qui tam* action to any party other than its original owner. That is so beyond dispute that this Court can easily reach this conclusion: "[J]urisdiction to interpret bankruptcy orders is not exclusive to the federal courts" and a court's retention of jurisdiction to interpret its orders "does not divest another court of concurrent jurisdiction where that court had it." *In re Friede Goldman Halter, Inc.*, 602 B.R. 307, 311–12 (Bankr. M.D. La. 2019); *accord In re Teligent, Inc.*, 459 B.R. 190, 197 (Bankr. S.D.N.Y. 2011) (holding that state courts can interpret bankruptcy court orders); *In re Wash. Mutual, Inc.*, 2012 WL 4755209, at *4 (Bankr. D. Del. Oct. 4, 2012) ("[T]he Plan and Confirmation Order can be interpreted by other courts of competent jurisdiction."). First Transit does not, and cannot, assert that the Commonwealth Court does not have jurisdiction to hear the *qui tam* action. Thus, whether the *qui tam* action requires interpretation of a Title III plan is not dispositive of whether this Court has "related to" jurisdiction.

Furthermore, First Transit's argument that the causes of action asserted in this *qui tam* vested in the Commonwealth and PRHTA under their Plans –and so the Court must determine whether the Commonwealth or PRHTA must bring the claims themselves– is also unavailing. The Relator's authority to bring these claims is statutorily endowed under Puerto Rico law. *See* 32 L.P.R.A. § 2934a(2)(a). Nothing in the Commonwealth or PRHTA's Plans divests the Relator of its authority to bring this *qui tam* action under Puerto Rico law, and the Commonwealth Court is more than capable of interpreting the Plans to reach this uncontroversial conclusion.

The Plans' sweeping definitions do not change this analysis. The Plans vest "Causes of Action... that have been or may be commenced by the Debtors." Commonwealth Plan § 1.83. But

a *qui tam* under Act No. 154-2018 is not commenced by the debtor; it is commenced by a private relator exercising an independent statutory grant of standing. *See* Art. 3.01, 32 L.P.R.A. § 2934a. The Plans vest *claims*; they do not repeal the enforcement mechanism through which those claims are prosecuted on the Government's behalf. Nothing in either Plan or Confirmation Order addresses *qui tam* standing or purports to modify Act No. 154-2018. And if the underlying claims did vest in the reorganized Commonwealth and PRHTA, the Relator is enforcing them *for* the Government, not against its interests. Thus, the vesting argument defeats itself.

Finally, no other basis for "related to" jurisdiction exists. The only connection between the *qui tam* action and the Title III cases is that the PRHTA is a party to the contract at issue. This does not help First Transit, because "common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope" of 'related to' jurisdiction. *Torres Cruz v. LUMA Energy, LLC (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 631 B.R. 607, 610 (D.P.R. 2021).

Without a claim based on PROMESA or any effect on the administration of the Title III cases, "[a]ny potential connection between this case and the Title III proceedings becomes too wide a chasm to bridge even under a broader conception of relatedness." *Univ. of P.R. Retirement Bd. v. Univ. of P.R.*, 2024 WL 468814, at *4 (D.P.R. Feb. 7, 2024) (Delgado-Hernández, J.) (remanding case where complaint was based only on Puerto Rico law, not PROMESA) (citing *Hernández-Montañez*, 77 F.4th at 63). Accordingly, this action does not fall within the Court's "related to" jurisdiction.

## B. In the Alternative, Equitable Remand and Abstention Require Remand

As a threshold matter, as this Court has repeatedly held, PROMESA § 306's "exclusive jurisdiction" provision does not bar abstention or remand. *Asociación de Salud Primaria de P.R.,*

*Inc. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 330 F. Supp. 3d 667, 674 (D.P.R. 2018) (stating that the "Court's exclusive jurisdiction over the property of the Commonwealth as a Title III debtor" would not be "preclusive of remand or abstention"); *LUMA Energy, LLC v. PREPA (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 2025 WL 3687919, at *10 (D.P.R. Dec. 19, 2025). Analogous to 28 U.S.C. § 1452, § 306(d)(2) of PROMESA allows the Court to remand a "claim or cause of action on any equitable ground."

Additionally, PROMESA § 309 provides that "[n]othing in this title prevents a district court in the interests of justice from abstaining from hearing a particular proceeding arising in or related to a case under this title." 48 U.S.C. § 2169. This provision "tracks the language of" 28 U.S.C. § 1334(c)(1), which provides for permissive abstention in bankruptcy cases. *Asociación de Salud Primaria*, 330 F. Supp. 3d at 675.

Under 28 U.S.C. § 1452, courts consider several factors when deciding whether equitable grounds for remand exist, including: (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court. *Asociación de Salud Primaria*, 330 F. Supp. 3d at 682). Each of these factors strongly favors remand, as the factor-by-factor analysis below demonstrates.

Likewise, under 28 U.S.C. § 1334(c)(1), when considering permissive abstention, courts look to a non-exhaustive list of twelve factors, many of which overlap with the equitable remand factors considered under § 306: (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the unsettled nature of applicable law; (4) a related proceeding in state court; (5) the jurisdictional basis, if any, other than

28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court to be enforced in bankruptcy court; (9) the burden on the bankruptcy docket; (10) the likelihood that the bankruptcy court proceeding involves forum shopping by one of the parties; (11) the right to jury trial; and (12) the presence of non-debtor parties. *Asociación de Salud Primaria*, 330 F. Supp. 3d at 682–83. Each of these factors likewise favors remand.

This is a Puerto Rico-law case between a Puerto Rico relator and a group of non-debtor corporate defendants, with no restructuring nexus, filed in the Commonwealth's courts. It has no effect on the administration of the Title III estate; state law issues predominate entirely; there is no jurisdictional basis other than the claimed "related to" jurisdiction under § 306; the proceeding is remote from the Title III cases; all defendants are non-debtors; and the Relator was involuntarily removed from the forum it chose.

The comity factor warrants particular attention. This is a Commonwealth sovereign enforcement action brought under Act No. 154-2018 to recover public funds allegedly obtained through fraud. Recently, in *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 808 F. Supp. 3d 267 (D.P.R. 2025), Judge Swain –in the same Title III docket to which the First Transit Defendants seek transfer– denied a motion to enforce the automatic stay against a Commonwealth governmental enforcement action, holding that the action fell within the police-power exception under 11 U.S.C. § 362(b)(4). In so holding, the Court emphasized that "[d]ue deference to the political and governmental prerogatives of the Commonwealth and its instrumentalities is especially fitting in the context of Title III proceedings of the Commonwealth and its instrumentalities." *Id.* at 277 (quoting *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 621 B.R. 289, 301 (D.P.R. 2020), *aff'd*, 7 F.4th

31 (1st Cir. 2021)). The Court further held that defenses challenging the legitimacy of a Commonwealth enforcement action "implicate issues of Puerto Rico law concerning Commonwealth governmental entities, and they are most appropriately raised in the Commonwealth's courts." *Id.* That reasoning applies here with equal force. Whether the Relator may prosecute fraud claims on the Government's behalf under Act No. 154-2018, and whether the defendants' defenses to those claims have merit, are questions of Puerto Rico law that belong in the Commonwealth's courts.[3]

Relator reserves the right to develop these arguments more fully should the Court find jurisdiction exists.

## VI. RESERVATION OF RIGHT TO SEEK ATTORNEY'S FEES

Relator reserves the right to seek attorney's fees and costs incurred as a result of removal pursuant to 28 U.S.C. § 1447(c). Under *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005), fees are appropriate where removal lacked an "objectively reasonable basis." The Notice of Removal asserts diversity without ever addressing the Government of Puerto Rico's status as the real party in interest in a *qui tam* action captioned in its name; a status that, under settled law, defeats diversity because a sovereign is not a "citizen" under § 1332. The Notice compounds this deficiency by asserting that no defendant is a citizen of Puerto Rico based solely on FTPR's state of incorporation, without addressing its principal place of business as required under *Hertz*. The PROMESA theory fares no better: this action is based solely on Puerto Rico law, has no connection to the administration of Plans confirmed over three years ago, and the First Circuit has held that "related to" jurisdiction does not extend to cases where PROMESA's tools for financial reform do

---

[3] Section 362(b)(4)'s operative language –excepting from the automatic stay a civil action by a governmental unit to enforce the police or regulatory power of the governmental unit– is materially parallel to the PROMESA removal exception in § 306(d)(1), 48 U.S.C. § 2166(d)(1), which uses substantially identical language. This *qui tam* is authorized by the Commonwealth and is brought in the name and on behalf of the Government of Puerto Rico.

not provide the basis for the claim. *Hernández-Montañez*, 77 F.4th at 63. Relator respectfully submits that the First Transit Defendants' removal lacked an objectively reasonable basis in light of binding authority squarely foreclosing their jurisdictional theories.

## VII. CONCLUSION

The First Transit Defendants' Notice of Removal asserts two independent bases for federal jurisdiction. Neither withstands scrutiny. Their diversity theory fails for two independent reasons: the Commonwealth of Puerto Rico is the real party in interest and is not a "citizen" under § 1332, and co-defendant FTPR is a citizen of Puerto Rico under the *Hertz* nerve center test, destroying complete diversity. Their PROMESA theory likewise fails: this action is based solely on Puerto Rico law, PROMESA's tools for financial reform do not provide the basis for any claim asserted here, and the Title III cases have been functionally over for more than three years. The *Commonwealth Case* is inapposite: no Plan assigned this action to another entity, the recovery is not pledged to creditors, and the *qui tam* does not interfere with any action brought by the Commonwealth or PRHTA. The Plans' boilerplate vesting provisions neither captured these fraud claims nor repealed the *qui tam* enforcement mechanism through which they are being prosecuted on the Government's behalf. Even if jurisdiction existed, every equitable remand and abstention factor favors return of this case to the Commonwealth courts. Because this Court lacks subject matter jurisdiction on every ground asserted, remand is mandatory. 28 U.S.C. § 1447(c).

**WHEREFORE**, Relator Messo, LLC respectfully requests that this Honorable Court:

1.  GRANT this Motion and REMAND this action to the Commonwealth Court of First Instance, San Juan Part, Case No. SJ-2025-CV-07134;

2.  Award Relator reasonable attorney's fees and costs incurred as a result of the improper removal pursuant to 28 U.S.C. § 1447(c); and

3.  Grant such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

Dated: March 11, 2026.

San Juan, Puerto Rico.

*/s/ Carlos J. Sagardía Abreu*

Carlos J. Sagardía Abreu
USDC-PR Bar No. 227510
**STRATEGIA LEGALE LLC**
1353 Ave. Luis Vigoreaux PMB 678
Guaynabo, PR 00966
Tel: (787) 360-7924
Email: cjsa@strategialegalepr.com

*/s/ Alfonso S. Martínez Piovanetti*

ALFONSO S. MARTÍNEZ PIOVANETTI
USDC-PR Bar No. 228813
PO Box 8013
San Juan, PR 00910
Tel. (787) 234-6239
alfonso@martinezpiovanetti.com

*Counsel for Plaintiff-Relator MESSO, LLC*

## CERTIFICATE OF SERVICE

I, Alfonso Martínez Piovanetti, hereby certify that on this same date, I filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys and participants of record.

In San Juan, Puerto Rico, this 11th day of March 2026.

*/s/ Alfonso S. Martínez Piovanetti*

Alfonso S. Martínez Piovanetti